IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-295-D

| | | |
|---|---|---|
| GREENWICH INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA, | ) ) | |
| | ) | |
| Defendant. | ) | |

On May 23, 2014, Greenwich Insurance Company ("Greenwich" or "plaintiff") filed a complaint for declaratory judgment [D.E. 1]. Greenwich contends that the "Errors and Omissions" clause in its insurance contract with Medical Mutual Insurance Company of North Carolina ("Medical Mutual" or "defendant") relieves Greenwich of any duty to defend or indemnify Medical Mutual concerning an underlying lawsuit that Dr. Arleen Thom filed against Medical Mutual. On August 25, 2014, Greenwich filed a motion for judgment on the pleadings or, alternatively, a motion for summary judgment [D.E. 15]. On August 25, 2014, Medical Mutual filed a motion for summary judgment [D.E. 17]. Thereafter, each party responded and replied. As explained below, the court grants Greenwich's motion for summary judgment and denies Medical Mutual's motion for summary judgment.

I.

Medical Mutual is a North Carolina insurance company that offers medical malpractice insurance coverage. Pl.'s Compl. [D.E. 1] ¶ 6. Medical Mutual issued a medical malpractice insurance policy to Dr. Arleen Thom. Def.'s Countercl. [D.E. 8] ¶ 4. The insurance policy provided

coverage to Dr. Thom for up to $1,000,000 in malpractice liability. Id. In May 2008, Stephen Nicholson, in his individual capacity and on behalf of the estate of his late wife Geraldine Nicholson, sued Dr. Thom for medical malpractice in Robeson County Superior Court ("the Nicholson action"). Id. ¶ 5; Pl.'s Compl. ¶ 12. As Dr. Thom's insurer, Medical Mutual defended the lawsuit on Dr. Thom's behalf. Def.'s Countercl. ¶ 6. As part of the defense, Medical Mutual hired two attorneys to defend the malpractice action, and Medical Mutual rejected multiple settlement offers that Nicholson made. See Pl.'s Compl. ¶ 14. The settlement offers all fell within the coverage limits of Dr. Thom's policy. Id. The Nicholson action proceeded to trial. Def.'s Countercl. ¶ 6. On October 12, 2012, the jury in the Nicholson action found Dr. Thom liable for medical malpractice and awarded Nicholson $4,650,000 in damages, plus prejudgment and postjudgment interest. Id.

On November 4, 2013, Dr. Thom filed suit against Medical Mutual in Cumberland County Superior Court ("the Thom action"). Def.'s Countercl. ¶ 7. Dr. Thom seeks damages against Medical Mutual for: (1) bad faith refusal to settle; (2) breach of fiduciary duty; (3) constructive fraud; (4) intentional and/or negligent infliction of emotional distress; and (5) unfair and deceptive trade practices. See Thom Compl. [D.E. 15-2] ¶¶ 96–125.

Medical Mutual has a reinsurance policy with Greenwich ("the Greenwich policy"). See Def.'s Countercl. ¶ 10. On November 12, 2013, Medical Mutual tendered the Thom action to Greenwich and claimed that Greenwich had a duty to defend Medical Mutual in the Thom action. Id. ¶ 13. On January 27, 2014, Greenwich sent a letter to Medical Mutual denying coverage for the Thom action, citing the Greenwich policy's Errors and Omissions exclusionary clause. Pl.'s Compl. ¶ 20. On February 19, 2014, Medical Mutual responded to Greenwich, asserting that Greenwich was obligated to defend and potentially indemnify Medical Mutual in the Thom action. Id. ¶ 21.

On May 23, 2014, Greenwich filed a declaratory judgment action in this court. On June 13,

2

2014, Medical Mutual answered Greenwich's complaint and filed a counterclaim seeking declaratory judgment. On July 14, 2014, the parties filed a joint report under Rule 26(f) of the Federal Rules of Civil Procedure and agreed that "the disputes encompassed by their respective pleadings are legal in nature, narrow, and amenable to efficient resolution on the merits by the Court based on case-dispositive motion practice." See [D.E. 13] 1. On July 25, 2014, the court ordered the parties to file cross-motions for dispositive relief and stayed discovery pending resolution of the motions. See [D.E. 14]. On August 25, 2014, the parties filed cross-motions for summary judgment.

II.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of showing an absence of genuine dispute of material facts or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). There is a genuine issue for trial if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." Id. at 252; see also Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the

3

nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587–88. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

Under North Carolina law, "an insurer's duty to defend is ordinarily measured by the facts as alleged in the [underlying] pleadings; its duty to pay is measured by the facts ultimately determined at trial." Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Id. at 691, 340 S.E.2d at 377. "Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." Id. at 691, 340 S.E.2d at 377. Consequently, "the duty to defend is broader than the duty to indemnify in the sense that an unsubstantiated allegation requires an insurer to defend against it so long as the allegation is of a covered injury; however, even a meritorious allegation cannot obligate an insurer to defend if the alleged injury is not within, or is excluded from, the coverage provided by the insurance policy." Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 7, 692 S.E.2d 605, 610–11 (2010) (emphasis added).

To determine whether an insurer has a duty to defend, courts use the "comparison test" and read the pleadings "side-by-side with the policy to determine whether the events as alleged are covered or excluded." Waste Mgmt., 315 N.C. at 693, 340 S.E.2d at 378. In Waste Management, the Supreme Court of North Carolina stated that, where the underlying allegations included both covered and excluded claims, the "mere possibility that the insured is liable (and that the potential liability is covered) suffice[s] to impose a duty to defend upon the insured." 315 N.C. at 691 n.2,

4

340 S.E.2d at 377 n.2. However, in Harleysville, the Supreme Court of North Carolina clarified that "[i]n addressing the duty to defend, the question is not whether some interpretation of the facts as alleged could bring the injury within the coverage provided by the insurance policy; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury." Harleysville, 364 N.C. at 7, 692 S.E.2d at 611 (citations omitted) (emphasis added).[1]

When construing an insurance contract, "the intention of the parties controls any interpretation or construction of the [insurance] contract, and intention must be derived from the language employed." Fidelity Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). North Carolina courts have "long recognized [a] duty to construe and enforce insurance policies as written, without rewriting the contract or disregarding the express language used." Id. at 380, 348 S.E.2d at 796. However, "any ambiguity in the words of an insurance policy [is resolved] against the insurance company." Harleysville, 364 N.C. at 9, 692 S.E.2d at 612. "To be ambiguous, the language of the insurance policy must, in the opinion of the court, be fairly and reasonably susceptible to either of the constructions for which the parties contend." Id. at 10, 692 S.E.2d at 612 (quotation omitted).

The Greenwich policy excludes from coverage all "loss, including defense expenses, resulting from any claim for . . . any actual or alleged lack of good faith or unfair dealing in the handling of any claim or obligation under any insurance contract." See [D.E. 1-1] 24 (emphasis added). By its plain terms, the Greenwich policy excludes from coverage any loss resulting from any

---

[1] The North Carolina Court of Appeals construed Harleysville to change North Carolina law, requiring more than a "mere possibility" of coverage to support a duty to defend and recognizing that the duty to defend is broader than the duty to indemnify only in a particular sense. See Kubit v. MAG Mut. Ins. Co., 210 N.C. App. 273, 277–79, 708 S.E.2d 138, 144–45 (2011). Although the parties debate the meaning of Waste Management, Harleysville, and Kubit, the court need not plumb their depths because the Errors and Omissions exclusion unambiguously excludes coverage for Medical Mutual's potential losses in the Thom action.

5

claim, no matter upon what legal theory that claim is based, that is merely alleged to be proximately caused by Medical Mutual's lack of good faith or unfair dealing in the handling of any claim or obligation under another insurance contract (such as Dr. Thom's policy). Thus, even if the trier of fact in the Thom action finds that all of Medical Mutual's relevant conduct occurred in good faith and with no unfair dealing, there is no coverage under the Greenwich policy if the Thom complaint <u>alleged</u> a lack of good faith or unfair dealing in Medical Mutual's handling of any claim or obligation under Dr. Thom's policy.[2] The relevant question becomes, then, whether the Thom complaint alleged such a lack of good faith or unfair dealing.

When the Greenwich policy and the Thom complaint are read side-by-side, it is clear that the complaint alleges a lack of good faith or unfair dealing, and thus that the policy excludes coverage for all claims. Dr. Thom has alleged, ad nauseam and in every claim, multiple ways in which Medical Mutual acted without good faith, engaged in unfair dealing, and acted "in contravention of basic decency, morality, and fairness" when handling Dr. Thom's insurance claim and fulfilling its obligations under Dr. Thom's policy. See, e.g., Thom Compl. ¶¶ 53–57, 66, 82–92, 96–124. All injuries that Dr. Thom claims in her complaint against Medical Mutual, and thus all Medical Mutual's potential loss, result from Medical Mutual's <u>alleged</u> lack of good faith or unfair dealing in refusing to settle the Nicholson action within the liability limits of Dr. Thom's malpractice insurance policy. See id. If Medical Mutual had settled the Nicholson action within the liability limits of Dr. Thom's policy, Dr. Thom would have no other injury. Thus, the alleged "bad faith"

---

[2] The court assumes without deciding that, as Medical Mutual asserts, a "lack of good faith" is equivalent to bad faith. See Br. Supp. Def.'s Mot. Summ. J. [D.E. 18] 6; Dailey v. Integon Gen. Ins. Corp., 75 N.C. App. 387, 396, 331 S.E.2d 148, 155 (1985) (noting that bad faith is "not based on honest disagreement or innocent mistake" and is evidenced by "malice, oppression, wilfulness and reckless indifference to consequences"); cf. Newton v. Standard Fire Ins. Co., 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976).

6

refusal to settle and other alleged unfair dealing in Medical Mutual's handling of her claim are but-for causes of Dr. Thom's claims and other injuries, whether based on Medical Mutual's alleged intentional or negligent conduct.

The court acknowledges that at least one of the claims in Dr. Thom's complaint merely alleges negligence (i.e., negligent infliction of emotional distress in count four). Nonetheless, all the claims in Dr. Thom's complaint allege a single course of conduct whereby Medical Mutual handled Dr. Thom's insurance claim with a lack of good faith or with acts of unfair dealing.[3] Accordingly, all the claims, and all potential loss, "result from" and are inextricably intertwined with Dr. Thom's allegation of Medical Mutual's lack of good faith or unfair dealing in the handling of her insurance claim. Thus, they fall squarely within the Errors and Omissions clause. See, e.g., 101 Ocean Condo. Homeowners Ass'n v. Century Sur. Co., 407 F. App'x 129, 131 (9th Cir. 2010) (per curiam) (unpublished) (finding no duty to defend even if there was a possibility of a claim falling within the policy because the injury underlying that claim arose out of excluded conduct); Lemko Corp. v. Fed. Ins. Co., No. 12 C 03282, 2014 WL 4924403, at *10 (N.D. Ill. Sept. 30, 2014) (noting an exclusion for all claims "based upon, arising from, or in consequence of any actual or alleged infringement" to be "quite broad" and finding that because the "core factual allegations" involved excluded conduct there was no duty to defend the noninfringement claims because "they would not have arisen but for" the infringement claim); Great Divide Ins. Co. v. Midnight Rodeo, Inc., No. 5:08-CV-204-F, 2010 WL 2077162, at *5–7 (E.D.N.C. May 24, 2010) (unpublished) (finding no duty to defend because the allegations of intentional and negligent action were inextricably intertwined and the plain language of the policy, which excluded all injuries "arising out of" any "actual or alleged" assault

---

[3] For example, Dr. Thom alleged that Medical Mutual showed, at minimum, a "reckless disregard" to the consequences for Dr. Thom when it refused to settle for $150,000 on a $1,000,000 policy. See, e.g., Thom Compl. ¶ 89; Dailey, 75 N.C. App. at 396, 331 S.E.2d at 155.

7

or battery, precluded coverage on all claims because the basis of each claim was the alleged excluded conduct); WPC Indus. Contractors, Ltd. v. Amerisure Mut. Ins. Co., 720 F. Supp. 2d 1377, 1382 (S.D. Fla. 2009) (finding that a policy exclusion applied, and therefore no duty to defend, because the underlying plaintiff alleged that her injuries were caused by excluded conduct); Montura Trading Post, Inc. v. Century Sur. Co., No. 2:05-cv-378-FtM-29DNF, 2006 WL 1884929, at *5–6 (M.D. Fla. July 7, 2006) (unpublished) (finding no duty to defend based on an exclusionary clause because the alleged facts "clearly demonstrate that the conduct [underlying the other claims] arises out" of excluded conduct).

Medical Mutual's contention that at least some of Dr. Thom's claims would not be barred under the Errors and Omissions clause is incorrect and contrary to the plain language of that provision, which bars coverage for any claim for any "alleged lack of good faith or unfair dealing in the handling of any claim or obligation under [the Thom insurance policy]." [D.E. 1-1] 24. Dr. Thom has made such allegations. In light of North Carolina's long-standing recognition that "parties generally are free to contract as they deem appropriate," the court cannot ignore the Greenwich policy's clear contractual language. See Christie v. Hartley Constr., Inc., 766 S.E.2d 283, 287 (N.C. 2014) (quotation omitted). Consequently, Greenwich does not have the duty to defend or indemnify Medical Mutual for losses incurred in the Thom action. Although Medical Mutual decries this possible outcome, an insurance company can obtain secondary reinsurance for conduct excluded under its primary reinsurance policy, a path that Medical Mutual apparently has taken here. See, e.g., [D.E. 15-3].

III.

In sum, the court GRANTS plaintiff's motion for summary judgment [D.E. 15] and DENIES defendant's motion for summary judgment [D.E. 17]. The clerk shall close the case.

8

SO ORDERED. This **27** day of January 2015.

                                                          JAMES C. DEVER III
                                                        Chief United States District Judge